**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

BOB ROSS, INC., a Virginia corporation,

                Plaintiff,

         v.

THE FOUND, INC., an Illinois corporation,

<u>Serve:</u>  James York, Registered Agent
         2138 W. Moffat Street
         Chicago, IL 60647

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Bob Ross, Inc. ("BRI" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendant The Found, Inc. ("The Found" or "Defendant"), respectfully states as follows:

## INTRODUCTION

1.      Bob Ross, the late artist, painting instructor, and television personality, is an American cultural icon. His landscapes and "Happy Trees" have inspired generations of budding artists to pursue their ambitions to "paint like Bob." Beginning in 1984, the company he co-founded and endowed with his name, "Bob Ross, Inc." ("BRI"), marketed and promoted Bob Ross to the American public. In its earliest days, BRI developed what would become an immensely popular and long-running public television series, "The Joy of Painting" featuring Bob Ross, which brought Bob Ross's painting classes into the living rooms of millions of viewers across the country. From there, the Bob Ross brand, fueled by BRI's efforts and licensing activities, expanded over the ensuing four decades into dozens of product categories, from instructional

videos and companion books to art and painting supplies and a host of apparel, merchandise, and other items.  BRI also created and implemented the highly successful "Certified Ross Instructor," or "CRI" program to teach aspiring artists Bob Ross's signature "wet-on-wet" painting technique.

2.      Bob Ross used several catchphrases on his television show that are immediately identifiable with him and his persona, such as the "happy little trees" and "happy little clouds" that he often depicted in his paintings.  He also coined the catchphrase "No Mistakes, Just Happy Accidents" to assure budding painters that there is no such thing as a "mistake" when creating a work of art.

3.      Even though Bob Ross passed away in 1995, BRI has "kept his flame alive" by continuing to bring Bob Ross's unique style and persona to a new generation of fans.  As the sole and exclusive owner of the Bob Ross intellectual property, including his right of publicity, trademarks, and copyrights, BRI vigilantly protects its valuable rights in this property through a robust licensing and enforcement program.

4.      The Bob Ross image and likeness, featuring his permed afro hair style and beard while he holds a paint brush and palette, is one of the most immediately recognizable and iconic images in popular culture:



5.      Defendant produces and sells novelty gift items, such as mugs, magnets, stationery, desk signs, greeting cards, stickers, keychains, pins, puzzles, art prints, and tote bags.  Without permission or authorization from BRI, Defendant has used, and is continuing to use, the unique and immediately recognizable Bob Ross name, image and likeness, as well as his signature catchphrases, on numerous products (the "Infringing Products").  Defendant's actions constitute violations of the Bob Ross right of publicity, as well as infringement of BRI's registered and common law trademarks.  BRI now brings this action to recover damages and other relief as redress for the harm it has suffered as a result of Defendant's conduct.

## I.   THE PARTIES

6.   Plaintiff BRI is a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business a 4003 Westfax Drive, Suite P, Chantilly, VA 20151.

7.      Upon information and belief, Defendant The Found is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 3401 N. Kedzie, Chicago, Illinois 60618-5619.  Defendant produces a variety of novelty gift items and sells such items through its website at www.thefound.com and through third party online and brick-and-mortar retail stores.

## II.   JURISDICTION AND VENUE

8.      This is an action for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1501, *et seq.*, for trademark infringement and unfair competition under Va. Code §§ 59.1-92.12-59.1-92.13, and for misappropriation of rights of publicity under Florida Statute § 540.08.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b); and 15 U.S.C. § 1121.  This Court has supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over BRI's state and common law claims, as those claims are so related to the claims over which this Court has original jurisdiction that the state and common law claims form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court has personal jurisdiction over Defendant The Found because The Found has continuous and systematic business contacts with the Commonwealth of Virginia. Upon information and belief, The Found has principals, partners, officers, directors, employees, or other persons related to Found doing business in the Commonwealth of Virginia.  Further, Defendant The Found maintains an active e-commerce website through which it has marketed and sold the Infringing Products to residents of the Commonwealth of Virginia and, in connection with such sales, has deliberately and intentionally shipped or caused to be shipped the Infringing Products to the Commonwealth of Virginia.

11.      Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendant is subject to personal jurisdiction in this judicial district, and that a substantial part of the events giving rise to this action occurred in this judicial district.

### III.   STATEMENT OF FACTS

#### A.     The Fame and Popularity of Bob Ross

12.     Robert Norman Ross ("Bob Ross" or "Mr. Ross") gained popularity upon airing his instructional show, "The Joy of Painting," on public television beginning in 1983.

13.     "The Joy of Painting" is an Emmy Award-winning television show in which Mr. Ross painted landscapes in thirty-minute segments.

14.     Mr. Ross coined and used several unique catchphrases on his show that gained popularity. For instance, Mr. Ross would refer to mistakes in his paintings as "happy accidents" and was known to describe "happy little trees" and "happy little clouds" in his artwork. Mr. Ross was also well known for using his own "wet-on-wet" painting technique.

15.     Mr. Ross was known for wearing jeans and a button-down shirt while filming on a minimalist set.

16. Mr. Ross is most readily recognized for his signature permed afro hair style.

17. Mr. Ross filmed 381 episodes of "The Joy of Painting" between 1983 and 1994.

18.     Mr. Ross co-founded BRI in 1984 to manage the growing artistic empire that Mr. Ross created, including his television show, art supply line, how-to-books, and painting classes.

19.     By 1987, Mr. Ross was traveling across the country teaching painting classes.

20.     Today, BRI sells exclusive merchandise through its online website (www.BobRoss.com) (the "BRI website") including t-shirts and costumes.

21.     Another page on the BRI website lists products items for which BRI has given permission to bear Mr. Ross's name, image, and likeness (https://experience.bobross.com/category/swag/).

22.     BRI authorizes the sale of its art supplies at official dealers nationwide (https://experience.bobross.com/store-finder-2/).

23.     BRI established and administers the program for training individuals to become "Certified Ross Instructors," or "CRIs," who are authorized by BRI to teach painting classes in Mr. Ross's signature wet-on-wet style worldwide (https://experience.bobross.com/cri-classes/).

24.     In 2011, American Public Television (APT) created a documentary about Mr. Ross's life, entitled "Bob Ross: The Happy Painter." The documentary was posted to the Bob Ross YouTube channel in 2018 and has nearly 2 million views.

25.     In 2015, all 381 episodes of "The Joy of Painting" were added to the official Bob Ross YouTube channel (https://www.youtube.com/user/BobRossInc) (the "Bob Ross YouTube channel"). The Bob Ross YouTube channel has more than 5 million subscribers and 360 million total views. The most-watched video on the Bob Ross YouTube channel has garnered over 30 million views.

26.     Additionally, beginning on October 29, 2015, the platform Twitch Creative celebrated its launch by streaming every episode of "The Joy of Painting" over a nine-day period (https://www.twitch.tv/bobross/). Twitch reported that this streaming marathon garnered 5.6 million viewers. Due to its popularity, Twitch repeated the marathon regularly, including on what would have been Mr. Ross's 74th birthday on October 29, 2016.

27.      According to Twitch, viewers of the first "The Joy of Painting" marathon sent 7.6 million chat messages using 3.8 million specially created "KappaRoss" emojis.

28.     In June of 2016, Netflix began streaming several episodes of "The Joy of Painting" episodes under the monikers "Beauty is Everywhere" and "Chill with Bob Ross."

29.     In 2020, the streaming platform Tubi added nearly 400 episodes of "The Joy of Painting" to its platform for free.

30.     Tubi reported that during the COVID-19 pandemic, views of "The Joy of Painting" skyrocketed.

31.     BRI maintains a substantial presence on social media.  BRI's Facebook page, which features Bob Ross-related content and products, has nearly 1.6 million "likes."  BRI's Instagram account has approximately 230,000 followers.  BRI also actively maintains a Twitter account using the handle @BobRossOfficial (https://twitter.com/BobRossOfficial) and shares news, photos, quotes, facts, and paintings by Mr. Ross. The @BobRossOfficial account has over 34,000 followers.

32.     Mr. Ross's paintings have been publicly displayed on several occasions, including from September 10-15, 2019 at the Franklin Park Arts Center in Purcellville, Virginia.

33.     In addition, Mr. Ross's paintings have been displayed at the following public venues:  (1) the DePaul Art Museum in Chicago (April 25-August 11, 2019) (4 paintings part of a larger exhibit); (2) the ArkDes Museum in Stockholm, Sweden (May 15-November 1, 2020) (3 paintings part of a larger exhibit); (3) the Pentiction Art Gallery in British Columbia, Canada (July 4-September 13, 2020) (Bob Ross-only exhibit); and (4) Museum MORE in Gorssel, The Netherlands (November 7, 2020-April 11, 2021) (Bob Ross-only exhibit).

34.     In 2019, the Smithsonian National Museum of American History in Washington, D.C. acquired several of Mr. Ross's paintings for its permanent collections, as well as a stepladder used by Mr. Ross on "The Joy of Painting" and two notebooks kept during the second and third seasons of the show.

35.     In 2020, BRI opened the Bob Ross Museum in Muncie, Indiana.

36.     Mr. Ross died on July 4, 1995 in the State of Florida but is more popular than ever. Mr. Ross has been hailed a "cultural icon" by prominent news outlets.

37.     Due to Mr. Ross's enormous success and popularity, BRI frequently receives requests to license Mr. Ross's name, image, likeness, and catchphrases or any of the thirteen federally registered trademarks owned by BRI. However, BRI takes care to limit such merchandising activities only to products of the highest quality and that conform with the wholesome and whimsical nature of Mr. Ross's image and art.

### B.     The Bob Ross Intellectual Property

38.     BRI is the owner of all right, title, and interest in and to Bob Ross's right of publicity – *See RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510 (E.D. Va. 2019) (O'Grady,

J.) – and thus controls the commercial use and exploitation of Bob Ross's name, image, likeness, catchphrases, voice, persona, reputation, and celebrity status.

39.     BRI is also the registrant and owner of thirteen active registered trademarks at the U.S. Patent and Trademark Office ("USPTO"), which consist, in whole or in part, of either the Bob Ross name, image, and likeness or the catchphrases made popular by Mr. Ross on "The Joy of Painting" television series.

40.     BRI is the registrant and owner of United States Trademark Registration No. Bob, registered on February 24, 1987 for goods and services, namely, publications in International Class 16 (the "'222 Mark"). A true and correct copy of the U.S. Trademark Registration No. 1,430,222 (the "'222 Registration") is attached hereto as Exhibit "A."  An image of the mark covered by '222 Registration is reproduced below:



41.     BRI's registration of the '222 Mark is *prima facie* evidence of its validity and conclusive evidence of BRI's exclusive right to use the '222 Mark in commerce in connection with publications. The registration of the '222 Mark also constitutes constructive notice to Defendants of BRI's ownership and exclusive rights in the '222 Mark. Further, BRI's '222 Mark is valid, incontestable, subsising, unrevoked, and uncancelled.

42.     BRI began actual and constructive use of the '222 Mark in interstate commerce at least as early as March 20, 1986 . Since that time, BRI has been continuously using, without

abandonment, the '222 Mark in connection with its publications, television show, and other merchandise featuring Mr. Ross to individuals throughout the United States, including in the Commonwealth of Virginia.

43.    BRI also owns common law rights in the '222 Mark and for services related to the broadcast and streaming of "The Joy of Painting" and other Bob Ross-related media, merchandise, and services in interstate commerce.

44.    BRI is the registrant and owner of United States Trademark Registration No. 2,028,460, registered on January 7, 1997 for goods and services, namely, video recordings featuring instruction on painting methods in International Class 9 and artistic materials, including plastic beater racks, instructional books, and paint brushes in International Class 16 (the "'460 Mark"). A true and correct copy of the U.S. Trademark Registration No. 2,028,460 (the "'460 Registration") is attached hereto as Exhibit "B."   An image of the mark covered by '460 Registration is reproduced below:



45.    BRI's registration of the '460 Mark is *prima facie* evidence of its validity and conclusive evidence of BRI's exclusive right to use the '460 Mark in commerce in connection with video recordings and artistic materials, including plastic beater racks, instructional books, and paint brushes. The registration of the '460 Mark also constitutes constructive notice to Defendants of BRI's ownership and exclusive rights in the '460 Mark. Further, BRI's '460 Mark is valid, incontestable, subsisting, unrevoked, and uncancelled.

46.     BRI began actual and constructive use of the '460 Mark in interstate commerce at least as early as December 31, 1990. Since that time, BRI has been continuously using, without abandonment, the '460 Mark in connection with its video recordings and artistic materials, including plastic beater racks, instructional books, and paint brushes, television show, and other merchandise featuring Mr. Ross to individuals throughout the United States, including in the Commonwealth of Virginia.

47.     BRI also owns common law rights in the '460 Mark for services related to the broadcast and streaming of "The Joy of Painting" and other Bob Ross-related media, merchandise, and services in interstate commerce.

48.      Further, BRI owns common law rights in and to marks consisting of the Bob Ross catchphrases, namely, HAPPY LITTLE CLOUDS, HAPPY LITTLE TREES, and NO MISTAKES, JUST HAPPY ACCIDENTS in connection with art and painting supplies, instructional books and videos, and a range of merchandise items (the "BRI Common Law Marks").

49.     To date, BRI has spent or caused to be spent nearly $17 million in advertising and promoting the '222 Mark, the '460 Mark, and the BRI Common Law Marks (collectively, the "Marks") and the goods and services offered and sold under the Marks. The retailers, merchandisers, artists, and entertainers who seek a license to any BRI trademark do so because the Marks are nationally recognized and respected, and part of the value licensees pay for the Marks is their associated goodwill.  BRI continues to engage in such advertising and promotion and its licensees depend on the maintenance of the value of the Marks. As a result, the relevant consuming public has come to recognize and associate the Marks with BRI as an indicator of the quality of goods and services that are provided by BRI and its licensees.  Consequently, the Marks have

acquired a highly favorable reputation among the members of the relevant consuming public and have become a valuable symbol of BRI's goodwill.

50.     BRI exercises control over the Marks through a robust licensing and merchandising program.  Specifically, BRI has licensed and continues to license third parties to use the Marks on or in connection with toys, games, socks, shirts, boxer shorts, figurines, bobbleheads, watches, books, coffee mugs, bookmarks, greeting cards, party supplies, posters, holiday ornaments, costumes, and other items.

51.     True and correct images of examples of BRI-authorized licensed merchandise, which is offered for sale to consumers through BRI's website (www.bobross.com) and often features the Bob Ross image and likeness in humorous and whimsical contexts, are depicted below:



**Bob Ross Phunny plush toy**



**Bob Ross socks**







**Bob Ross bookmark**          **Bob Ross party game**          **Bob Ross ornament**







**Bob Ross greeting cards**                    **Bob Ross bobblehead**



**"Funko Bob" collectible figurine**                    **Bob Ross Chia Pet**

52.     As discussed above, BRI's Marks, its other registered and common law trademarks, and Mr. Ross's name, image, likeness, and catchphrases have appeared in national and international media celebrating the legacy of Mr. Ross and his show, "The Joy of Painting." Streaming and broadcast of "The Joy of Painting" have garnered hundreds of millions of views, even 28 years after Mr. Ross's death.  As a result, BRI's Marks, as well as Mr. Ross's name, image, likeness, and catchphrases have achieved substantial recognition and secondary meaning among the trade and the consuming public and have substantial commercial value.

### C.     Defendant's Infringing Acts

53.     Defendant, without authorization or permission from BRI, produces, markets, and sells merchandise items that display the Bob Ross name, image, and likeness along with Bob Ross's signature catchphrases.

54.      Set forth below are true and correct images of a "Happy Birthday" greeting card produced     and     sold     by     The     Found     (available     for     purchase     at https://www.faire.com/product/p_82k7ohulho?bPage=2&refB=1), showing the cover, inside, and back pages of the greeting card, which prominently displays the Bob Ross image and likeness

13

along with the wording "There are no mistakes, just happy accidents" (hereinafter, the "Infringing Happy Birthday Greeting Card"):



There are no mistakes, just happy accidents.



55.     Set forth below is a true and correct image of a desk sign produced and sold by The Found (available for purchase at https://thestandardgoods.com/products/the-found-bob-ross-birthday-card?_pos=1&_sid=28f36dd7b&_ss=r), which displays the Bob Ross name along with the wording "There are no mistakes, just happy accidents" (hereinafter, the "Infringing Desk Sign"):



56.     Set forth below is a true and correct image of a sticker produced and sold by The Found (available for purchase at https://thestandardgoods.com/products/the-found-die-cut-vinyl-

sticker-bob-ross?_pos=8&_sid=ce0bee503&_ss=r) that features the image and likeness of Bob

Ross (hereinafter, the "Infringing Bob Ross Sticker"):



57.     Set forth below is a true and correct image of another sticker produced and sold by

The Found (available for purchase at https://thestandardgoods.com/products/the-found-die-cut-

vinyl-sticker-bob-ross-no-mistakes?_pos=9&_sid=ce0bee503&_ss=r) that features the image and

likeness of Bob Ross and displays the wording "No Mistakes . . . Just Happy Accidents"

(hereinafter, the "Infringing No Mistakes Sticker"):



58.     Set forth below is a true and correct image of a keychain produced and sold by The

Found (available for purchase at https://thestandardgoods.com/products/the-found-keychain-bob-

ross-happy-accidents?_pos=12&_sid=6084618f8&_ss=r ) that displays the Bob Ross image and

likeness along with the wording "No Mistakes . . . Just Happy Accidents" (hereinafter, the "Infringing Keychain"):



59.     Set forth below is a true and correct image of a pouch produced and sold by The Found (available for purchase at a retail store called Enjoy located at Lincoln Square in Chicago, Illinois) bearing the Bob Ross image and likeness, along with the "No Mistakes, Just Happy Accidents" catchphrase (hereinafter, the "Infringing Pouch"):



60.     Set forth below is a true and correct image of the front and back sides of a "get well soon" greeting card produced and sold by The Found (available for purchase at

https://florodora.com/gifts/g1142) bearing the Bob Ross image and likeness (hereinafter, the "Infringing Get Well Soon Greeting Card"):




61.     Defendant is not, and has never been, affiliated with, sponsored, or licensed by BRI. The use by Defendant on the Infringing Happy Birthday Greeting Card, the Infringing Desk Sign, the Infringing Bob Ross Sticker, the Infringing No Mistakes Sticker, the Infringing Keychain, the Infringing Pouch, and the Infringing Get Well Soon Greeting Card (hereinafter collectively referred to as the "Infringing Products") of (a) the Marks, (b) designs confusingly similar to the Marks, and (c) Mr. Ross's name, image, likeness, and catchphrases was never authorized, approved, or licensed by BRI.

62.     Defendant has never contacted BRI for permission to use or license BRI's trademarks, including the Marks, any designs confusingly similar to the Marks, or Mr. Ross's name, image, likeness, and catchphrases for use on or in connection with any goods or services, including on any of the Infringing Products.

63.     BRI has written to Defendant on several occasions to demand that Defendant cease and desist from all production, marketing, and sale of the Infringing Products.  While Defendant removed the Infringing Products from its website, it continues to offer for sale and sell the Infringing Products through third party websites and brick-and-mortar retail stores.

### D.     The Harm to BRI as a Result of Defendant's Unlawful Actions

64.     Since 1983, BRI has offered goods and services in interstate commerce under the Bob Ross name, image, likeness and catchphrases. The '222 Mark has been in use since 1986 and the '460 Mark has been in use since 1990. Television viewers from 1983 through 1994 have long associated the Marks with the goodwill generated by Mr. Ross, his show, his name, image, likeness, and catchphrases, and his products.  In recent years, "The Joy of Painting" and Mr. Ross have become immensely popular and ubiquitous even among a population that was born after Mr. Ross's death.  Mr. Ross, his name, image, likeness, catchphrases, the Marks, and BRI have come to be associated with high-quality products and wholesome content among all generations of people.

65.     Upon information and belief, Defendant produces and sells merchandise geared toward millennials and Generation-Z consumers who are interested in popular culture. Both Defendant and BRI offer goods and services, namely products and services bearing the Bob Ross name, image, likeness, catchphrases, or the BRI Marks, that are targeted, offered, and sold to the same classes of prospective customers, namely, members of the general public who are fans of Mr. Ross, "The Joy of Painting," and popular culture more generally.

66.     Upon information and belief, Defendant has intentionally and willfully directed its advertising, promotional and sales efforts at the same classes of consumers as those to whom BRI caters in an effort to capitalize upon and benefit from BRI's substantial goodwill and reputation

and to unlawfully trade upon the substantial commercial value of Bob Ross's name, image, likeness, and catchphrses, as well as the BRI Marks.

67.     Further, upon information and belief, Defendant has engaged in such conduct with the knowledge that BRI's goodwill, the Marks, and Mr. Ross' name, image, likeness, and catchphrases have gained fame in popular culture for their wholesome and relaxing content.

68.     BRI's Marks, the Bob Ross name, image, likeness, and catchphrases, and the images depicted on the Infringing Products are substantially and confusingly similar. Thus, Defendant's use of the images depicted on the Infringing Products is likely to be confusing to a substantial number of actual and potential customers and is likely to cause them to be deceived and to erroneously assume that Defendant's goods are in some way connected with, sponsored or licensed by, or otherwise affiliated with BRI, all to BRI's detriment.

69.     Not surprisingly, Defendant's unauthorized use of Bob Ross's name, image, likeness, and catchphrases on the Infringing Products has resulted in actual confusion among the trade and consuming public.  BRI's licensees have contacted BRI in the belief that the Infringing Products are licensed or otherwise approved by BRI.

70.     Given the fame and popularity of Mr. Ross and the ubiquity of the Marks and his name, image, likeness, and catchphrases, the confusion between BRI and Defendant's Infringing Products, along with Defendant's cavalier attitude toward intellectual property infringement, puts BRI at risk and damages its reputation, goodwill, and ability to market and promote its goods and services.

71.     Defendant's unauthorized use of the wording and images on the Infringing Products has injured BRI's interests and will continue to do so unless immediately enjoined.  Specifically, Defendant (a) has traded upon and threaten to further trade upon the significant and valuable goodwill in BRI's Marks and Mr. Ross's name, image, likeness, and catchphrases; (b) is likely to

cause further public confusion as to the source, sponsorship, or affiliation of Defendant's goods; (c) has damaged and threaten to damage BRI's significant and valuable goodwill in its Marks and the Bob Ross name, image, likeness, and catchphrases; and (d) has injured and threaten to injure BRI's right to use and license its Marks and the Bob Ross name, image, likeness and catchphrases as the exclusive indicia of origin of BRI's goods and services.

72.     Further, Defendant's unauthorized use of Bob Ross's name, image, likeness, and signature catchphrases on the Infringing Products has damaged and, if unrestrained, will likely continue to damage BRI's business relationships with its licensees.  In particular, BRI's licensees have expressed to BRI their displeasure that Defendant is commercially exploiting the Bob Ross name, image, likeness, and catchphrases without having to pay royalties to BRI, thereby enabling Defendant to offer for sale and sell the Infringing Products at price points that are more desirable to consumers.

73.     Notwithstanding BRI's demands, and with full knowledge of BRI's ownership of the Marks and the name, image, and likeness of Bob Ross and his signature catchphrases, Defendant has been and is continuing to market, promote, advertise, distribute, offer for sale, and sell the Infringing Products containing the design confusingly similar to the BRI Marks and clearly depicting the unmistakable and immediately recognizable image and likeness of Bob Ross and his signature catchphrases.

## COUNT I

### Misappropriation of the Bob Ross Right of Publicity
### (Florida Stat. § 540.08)

74.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     BRI is the owner of all right, title, and interest in and to Bob Ross's right of publicity.  *See RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510 (E.D. Va. 2019) (O'Grady,

J.).  BRI thus has sole control over the commercial use and exploitation of Bob Ross's name, likeness, image, voice, persona, catchphrases, reputation, and celebrity status.

76.     Bob Ross was a resident of the State of Florida at the time of his death in 1995.

77.     Florida Statute § 540.08 provides protection of the right of publicity for forty years after death.  As a result, the rights of publicity owned by BRI are entitled to protection until at least 2035.

78.      Bob Ross's name, likeness, image, voice, persona, catchphrases, reputation, and celebrity status have substantial commercial value and are marketable in the areas of art, popular culture, and other valuable licensing.

79.     Defendant has used and is continuing to use Bob Ross's name, image, likeness, and catchphrases for commercial purposes and for the purposes of trade, including but not limited to selling and offering for sale the Infringing Products without BRI's permission, approval, license, or consent.

80.     On information and belief, Defendant's use of Bob Ross's name, image, likeness, and catchphrases on the Infringing Products is knowing, intentional, willful, wanton, and malicious.

81.     On information and belief, Defendant's use of Bob Ross's name, image, likeness, and catchphrases on the Infringing Products is designed to enhance the probability of sales of the Infringing Products for Defendant's financial benefit.

82.     BRI has granted no permission, authorization, approval or license to Defendant to use Bob Ross's name, image, likeness, and catchphrases on the Infringing Products.

83.      Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn substantial revenues and profits on the strength of Bob Ross's name, image, likeness, and catchphrases.

84.     Defendant's unauthorized use for commercial purposes of Bob Ross's name, image, likeness, and catchphrases constitutes a willful misappropriation and violation of Bob Ross's right of publicity in and to such name, image, likeness, and catchphrases, in violation of Fla. Stat. § 540.08.

85.     By reason of Defendant's wrongful acts alleged herein, BRI has suffered and is continuing to suffer damage to its rights as the sole and exclusive owner of Bob Ross's right of publicity as a result of the erroneous perception that the Infringing Products or Defendant are associated with, affiliated with, sponsored by, licensed or endorsed by BRI.

## COUNT II

### Federal Trademark Infringement
### (Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))

86.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The '222 Registration is valid and subsisting and is *prima facie* evidence of the validity of the '222 Mark, of BRI's ownership of the '222 Mark, and of BRI's exclusive right to use the '222 Mark for goods and services relating to Mr. Ross.  By virtue of this registration, the '222 Mark is entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

88.     The Infringing Products' depiction of a design confusingly similar to the Marks for competing apparel and accessories is likely to cause confusion, mistake, or deception as to the source or origin of Defendant's goods in that the trade and the consuming public are likely to believe that Defendant's goods are provided, sponsored, approved, or licensed by BRI, or that Defendant is affiliated, associated or otherwise legitimately connected with BRI.

89.     Defendant's adoption and use of the design that is confusingly similar to the BRI Marks was intentional and was for the purpose of misleading the trade and the consuming public. These willful actions are in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

90.     As a result of Defendant's infringement, as described above, the trade and the consuming public are likely to be confused and deceived as to the source, sponsorship, affiliation, or approval of BRI's goods and services marketed under its protected Marks.

91.     BRI has been damaged by the aforementioned acts in an amount to be determined at trial.  Defendant's adoption and use of the depictions on the Infringing Products is confusingly similar to BRI's Marks and was undertaken by Defendant intentionally, maliciously, and in bad faith.  Therefore, BRI is entitled to recover from Defendant treble damages and attorneys' fees.

92.     In addition, Defendant's conduct, if it continues, will result in irreparable harm to BRI and, specifically, to the goodwill associated with the BRI Marks, unless such conduct is enjoined.

## COUNT III

### False Designation of Origin
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

93.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     Defendant's conduct as described herein constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with its services which is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of Defendant with BRI, and/or as to the origin, sponsorship or approval of Defendant's goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant's conduct as described herein also constitutes an attempt to trade on the goodwill that BRI has developed in the Marks, all to the damage of BRI.

95.     Defendant's use in commerce of a designation which is confusingly similar to the Marks, despite having actual and constructive notice of BRI's prior rights in and to the Marks,

constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about its services and commercial activities.

96.     Defendant has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to BRI.

## COUNT IV

### Trademark Infringement and Unfair Competition Under Virginia Law
### (Va. Code §§ 59.1-92.12-59.1-92.13)

97.     BRI hereby realleges and incorporates by reference the allegations of paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.     Defendant's acts constitute unlawful infringement and unfair competition under Va. Code §§ 59.1-92.12-59.1-92.13 as such acts are likely to mislead and deceive customers and prospective customers into believing that Defendant's goods are those of BRI. As a result of Defendant's unlawful infringement and unfair competition, BRI has suffered and will continue to suffer irreparable injury and damage in an amount yet to be determined.

99.     Upon information and belief, Defendant's wrongful acts resulted in substantial unjust profits and unjust enrichment to Defendant in an amount to yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, BRI prays that it be granted the following relief:

A.      A preliminary and permanent injunction restraining and enjoining Defendant, its principals, officers, directors, agents, servants, and employees, as well as any successors and/or assigns of Defendant and all those acting in privity, concert or participation with Defendant, from:

(i)     imitating, copying, duplicating or otherwise making any use of the Marks or any marks confusingly similar to the Marks, including, without limitation, the images depicted on the Infringing Products;

(ii)    advertising, marketing, promoting, distributing, offering for sale, or selling any product or service in connection with any copy or colorable imitation of the Marks, including but not limited to the Infringing Products;

(iii)    using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or service advertised, promoted, offered or sold by Defendant is sponsored, endorsed, connected with, approved or authorized by BRI;

(iv)    using any name, image, likeness, or catchphrase of Bob Ross, or any colorable imitation thereof, for commercial purposes;

(v)    causing likelihood of confusion or injury to BRI's business reputation and to the distinctiveness of the Marks by unauthorized use of the same;

(vi)    engaging in any other activity constituting unfair competition or infringement of the Marks or BRI's rights in, or to use, or to exploit the same; or

(vii)    assisting, aiding or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (i) through (vi) above.

B.    A finding that the acts of Defendant constitute trademark infringement in violation of 15 U.S.C. § 1114(1);

C.    A finding that the acts of Defendant constitute false designation of origin in violation of 15 U.S.C. § 1125(a);

D.    A finding that the acts of Defendant constitute trademark infringement in violation of Va. Code §§ 59.1-92.12-59.1-92.13;

E.   A finding that the acts of Defendant constitute misappropriation of rights of publicity under Fla. Stat. § 540.08;

F.   A finding that Defendant's violations of BRI's trademark rights, under 15 U.S.C. §§ 1114 and 1125(a) and (d), are willful as a result of the actions complained of herein, and that this is an exceptional case pursuant to 15 U.S.C. § 1117(a);

G.   An award to BRI of monetary damages in an amount to be fixed by the Court in its discretion as just, including all of Defendant's profits or gains of any kind resulting from the actions complained of herein, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117(a) and (b), and the common law of the Commonwealth of Virginia;

H.   An award to BRI of its attorneys' fees and its costs and expenses of litigation, pursuant to 15 U.S.C. § 1117(a) and (b);

I.   An order requiring Defendant and any principals, agents, servants, employees, successors and assigns of and all those in privity or concert with Defendant who receive actual notice of said order, to deliver up for destruction all infringing products and all promotional, advertising and any other printed materials and items of any kind bearing (i) the Marks; (ii) the name, likeness, image, and/or catchphrases of Bob Ross and/or (ii) any other mark or design that is confusingly similar to the Marks; and

J.   Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

**JURY DEMAND**

BRI hereby demands a trial by jury as to all issues and claims so triable.


Dated:   April 19, 2023                         Respectfully submitted,



                                                /s/ Thomas J. McKee, Jr.
                                                Thomas J. McKee, Jr., VSB No. 68427
                                                Shirin Afsous, VSB No. 89999
                                                GREENBERG TRAURIG, LLP
                                                1750 Tysons Boulevard, Suite 1000
                                                McLean, VA 22102
                                                Telephone: 703.749.1300
                                                Facsimile: 703.749.1301
                                                mckeet@gtlaw.com
                                                shirin.afsous@gtlaw.com

                                                Steven J. Wadyka, Jr.
                                                (*pro hac vice* application forthcoming)
                                                GREENBERG TRAURIG, LLP
                                                2101 L Street, N.W., Suite 1000
                                                Washington, D.C.  20037
                                                Telephone: (202) 331-3105
                                                Facsimile: (202) 331-3101
                                                Email: wadykas@gtlaw.com

                                                *Counsel for Plaintiff Bob Ross, Inc.*